### MARY AND HENRY VAN GLAHN v. PETER DUNHAM.

REISSUE OF A MORTGAGE.

Where a party who is the maker of a mortgage leaves it in such a position that it can be issued, or he himself issues it as a valid mortgage, after it has been paid, then between the mortgagor and any person who becomes the purchaser of that mortgage, the purchaser will hold the mortgage free from any defense.

ON ERROR to the Court of Common Pleas of Ottawa county,

HAYNES, J.

The case is brought here by petition in error filed by Mary E. Elwell, Geo. E. St. John, Sarah Dunham and J. J. R. Stevens, for the purpose of reversing a judgment rendered by the court of common pleas, declaring that a certain mortgage that was set up in the answer and cross-petition of said Alice DeWitt, to-wit: "In case it was not a lien on plaintiff's premises, mentioned in the petition."

Before passing to the merits of the case, I wish to make some remarks about the condition of the pleadings. A petition was filed by Henry Van Glahn, setting up that he had a mortgage for $875 upon certain premises which he describes in his petition. Part of the premises described by him—the premises described in the petition filed by Van Glahn are as follows: "The east part of the northwest quarter of the southwest quarter of sec. No. 12, township 12, range 15, containing 14 and 25-100 acres of land, situated in Carroll township, Ottawa county, Ohio." Also the west half (continuing the description). In the answer and cross-petition of Alice DeWitt, wherein she sets up her mortgage, she describes the property as follows: "Situated in the township of Carroll, Ottawa county, Ohio, and known as being the northwest quarter of the southwest quarter of section 12," and also sets up the other 20 acres.

Now, it will be noticed that Van Glahn sets up an interest in the east part of the northwest quarter, while she sets up a mortgage on the whole of the northwest quarter, the fact being as perhaps appears in the evidence, that she was the owner of a half of that northwest quarter while the other part of that northwest quarter belonged to Peter Dunham. Van Glahn sets up in his petition his

mortgage, the date of it, the time of its record, and also sets up that Mr. Bense and Mrs. DeWitt claim some interest in the premises. Mrs. DeWitt, in her petition, sets up her mortgage and avers that it is the first lien upon the premises, giving the date of the execution of the mortgage and the date of its record. Now, Mary E. Elwell, as I have stated, owned half of the first portion of the described land and she and Peter Dunham have their joint answers, to plaintiff's petition amended; and for answer to the amended answer and cross-petition, Alice DeWitt adopts all allegations in the amended petition of the plaintiff Van Glahn, "as fully as though set out herein." The result of that is that they deny nothing in regard to Mrs. DeWitt, and the amended petition of Van Glahn makes no allegations that amount to anything, except that she claims a lien therein and that it was intended to be the amended answer of Van Glahn and the cross-petition of Mrs. DeWitt. I see the word "answer" is stricken out, and so far as the issues or the pleadings of Mrs. DeWitt are concerned, as between herself and Peter Dunham and Mary E. Elwell, they stand without any denial whatever, simply an affirmance of the petition of Van Glahn.

Henry Van Glahn, for his individual answer and cross-petition to their cross-petition, is the same in fact. He sets up certain matters which shall appear hereafter and to that a reply is filed by Mrs. DeWitt.

The case upon the trial, so far as the journal entry is concerned and the judgment of the court, which is found upon the issues joined between Van Glahn and Mrs. DeWitt, is that Mrs. DeWitt has no lien upon the premises set up in her petition. One-half of the 40 acres, as I understand it to be one-half of the north-west quarter of a certain section or portion that stands in the name of Mary E. Elwell, he nowhere describes in his petition, because no one makes a claim to the east half of it or that portion owned by Sarah E. Dunham ; so that the finding of the court upon that is upon the issues of Van Glahn and Mrs. DeWitt, as there is no question as to whether the mortgage is paid or not. I come now to the case itself.

A bill of exceptions was taken and the evidence that was offered in court is set out in full. From this appears, in order of time, that on December 16, 1889, Peter Dunham and his wife, and Mary E. Elwell and her husband, joined in a mortgage to one J. J. R. Stevens, wherein they conveyed the property that is set up in the cross-petition conveying this north-west quarter of the southeast quarter of section No. 12, or the whole of it to J. J. R. Stevens, for the purpose of securing a note of even date for the sum of $450, payable three years after date with interest at 7 per cent., payable annually. Van Glahn claims a mortgage on the east part of the said northwest quarter of the southeast quarter of section No 12, and the other 20 acres by virtue of a mortgage executed by Peter Dunham and Sarah Dunham his wife, on December, 31, 1890, to Geo. E. St. John, and which was by Geo. E. St. John, assigned and transferred to Henry Van Glahn on January 13, 1891—it reads here 1890, but it should be 1891, but at the time waived demand and notice of non-payment and endorsed the note and made an assignment of the mortgage which I have read.

The testimony shows that sometime prior to January, 1891, or December, 1890, Dunham being in debt somewhat, was desirous of borrowing more money and merging his debts all in one mortgage. He, or the parties, made application to Mr. Stevens (the note and mortgage was not yet due) asking him if he would be willing to take the money on his note and mortgage before the same became due, and he said he would, and thereupon, they made application to Geo. E. St. John—perhaps Dunham alone—in order to know if he could negotiate for them a loan and he expressed himself that he could, and thereupon, this note and mortgage was made and was afterwards sold to Van Glahn. Out of this money it was expected that this mortgage of Stevenson of $475 would be taken up, and also a mortgage of Bense which was on the premises, and which was only a small amount due, perhaps $60. The note and mortgage of Stevenson not being paid and running along for some little time—just what time I don't know—he placed it in the hands of an attorney in this city for collection in order to receive the money. He notified the parties, Elwell and Dunham, that he had that note for collection and that it had not been paid yet, and, thereupon, they went to see St. John about the matter and St. John said he would take it up. The result was that they came together on May 16, (I think it was in 1891,) and at the office of Mr. Geo. E. St. John in this village. The attorney, Mr. Love, when he took the note and mortgage from Mr. Stevens for collection had the note endorsed in blank by Stevens writing his name across it and also had Stevenson write his name upon the mortgage in blank. This was for the purpose, as stated at the time, so that if it was paid the mortgage could be canceled. So that when the parties met at St. John's office and the note was produced, and the mortgage, they each had upon the face blank endorsements of Mr. Stevens. Mr. St. John then drew a check for the amount of the note and mortgage to Stevens and delivered it to the attorney and the mortgage was left there.

It is in controversy as to whether it was laid on the table or delivered to St. John in hand. St. John then said to the parties, there being present himself, Mrs. Elwell and Mr. Dunham, that insomuch as there was this prior mortgage of Bense's on the property that he wished to keep that mortgage alive. Mr. Love had left at that time and Mrs. Elwell followed him and stated to him the matter and asked what should be done about it. She said St. John had said to her that if it was left with him he would endorse the note and mortgage upon this $875 note and mortgage, and Mr. Love told her that if she did anything of that kind she should be sure that the endorsement was made. Some conversation followed so that Mr. Love returned with her to St. John's office and there a receipt was drawn up by Mr. Love, St. John saying that the $875 note and mortgage were not in his possession at Port Clinton, but were in his box in the bank of Sandusky, and that he would make endorsement when he saw the mortgage. This receipt reads as follows:

"May 16, 1891.

" Received of Mary E. Elwell and Peter Dunham $494.60 (I think it is,) being the amount of the Stevens mortgage and interest; amount to be credited or endorsed on the $875 mortgage dated December 21, 1891. " "Also to be endorsed 'interest paid to date, May 16, 1891.' "

And thereupon, having received this receipt, Mrs. Elwell left the note and mortgage in the possession of Mr. St. John. Thereupon, Mr. St. John (but not in the presence of the parties) made the following endorsement :

"May 16, 1891.

"For value received, I hereby assign the within mortgage to George E. St. John.

J. J. R. STEVENS."

and had assignment recorded as follows :
" Assignment entered of record May 20, 1891.

" N. CLEMONS, Recorder."

On the note under the name of J. R. Stevens it is written near the top of the note "Payment guaranteed, George E. St. John." Shortly after that, the exact date I have forgotten, he made application to a gentleman by the name of Flynn, in Sandusky, for the purpose of selling the note and such arrangements were made at the time that Mr. Flynn bought it for Mrs. DeWitt. Mrs. DeWitt did not see the note, but left it entirely with Flynn, who was acting as her agent. He, however, took measures to have an abstract of the title, and one was furnished him showing the condition of the property and mortgage which was purchased. But it showed on the face of the abstract that the mortgage of Mr. Flynn was the prior mortgage, excepting, perhaps, the Bense mortgage, and that it had been duly assigned to George E. St. John; and thereupon, he paid the amount of the mortgage, $450, to St. John and took an assignment, which reads as follows:

"For value received, I hereby sell and transfer all my right, title and interest in this mortgage herein described to Alice DeWitt.

GEO. E. ST. JOHN. "

It was afterwards, or not until January 27, 1893, entered upon the records of this county, as it appeared by the endorsement of N. A. Clemons, recorder. Mrs. DeWitt continued to hold this note and mortgage and there was paid upon it by S. John, or through St. John, interest to December 16, 1890; December 16, 1891, and to December 16, 1892, St. John being the guarantor of the note.

I believe now these are the leading facts in the case and the main issue that was tried before the court was upon the question as to whether the mortgage was paid and satisfied, or whether Mrs. DeWitt held it under such circumstances as would entitle her to hold as a lien upon the premises prior to the lien of Van Glahn. We think that this note and mortgage were left in the hands of St. John as a valid and subsisting mortgage—a live mortgage; that the understanding and agreement at the time was that he was to endorse upon the $875 mortgage the amount of this first mortgage, $450, reducing that mortgage to such an

amount that the two mortgages would make an aggregate of $875. St. John having this mortgage then in his possession as a live mortgage, as his own property, proceeded to sell it in the manner pointed out to Mrs. DeWitt. Now we are of the opinion under the law of the case, that in so doing, so far as Mrs. Elwell is concerned, that this mortgage of Mrs. DeWitt's is a valid and subsisting mortgage, at least upon the portion of the premises which was owned by Mrs. Elwell, which I understand to be the west part of the northwest quarter of the southeast quarter, after the lien of Bense upon the premises.

So far as the mortgage of Van Glahn is concerned, so far as the lien of this mortgage is concerned as between Mrs. DeWitt and Van Glahn, we think this mortgage must be postponed to the Van Glahn mortgage. The authorities are clear, that the mortgage is to take effect, as to subsequent mortgagees as of the date upon which the new transfer is made. We hold that Van Glahn's mortgage must be paid first out of that portion of the land belonging to Mr. Dunham, and that as between Mrs. DeWitt and Dunham, her mortgage is a valid mortgage next after the Van Glahn mortgage.

There is no doubt, we suppose, as between these parties, Elwell and Dunham and Stevens, that the note was paid. The note, however, has gone out upon the market with his name on it, and with his name upon the mortgage, but then, his rights and liabilities made in that way are not before us. Yet, the authorities are clear, we think, that where a party who is a maker of a mortgage leaves it in such a position that it can be issued, or he himself issues it as a valid mortgage, after it has been paid, then between the mortgagor and any person who becomes the purchaser of that mortgage, the purchaser will hold the mortgage free from any defense.

It is said that Mrs. DeWitt must stand in the shoes of St. John; we do not understand that principle applies in a matter of this kind. The person who purchased the mortgage has been guilty of no negligence in regard to the purchase; it was bought on the strength of this assignment, and without any knowledge, at the time, that these transactions occurred on May 16, 1891, and therefore, she becomes a *bona fide* purchaser of the notes and mortgage and is protected in a court of chancery.

The court below having found that the mortgage was an invalid mortgage, the action being an action triable at law, and the case coming to us on error, the judgment of the court must be that the judgment of the court of common pleas must be reversed and the case remanded for further proceedings according to law.